And I guess if you listen to the argument that just preceded you, jurisdiction is weird, it's ugly head again. We have a body of case law that discusses whether or not we have jurisdiction over an appeal, and that deals with whether or not we have a final judgment here. And it appears from the pleadings, and hopefully you can tell us it ain't so, that you have a pending counterclaim out here with regard to patent misuse. And it's generally the view of our cases, starting with Nystrom, that we don't have jurisdiction over cases in which there's remained a pending counterclaim. Can you speak to that? Yes, Your Honor. I'm Philip Mann on behalf of the appellant here, and I was going to address that in my argument. As far as we're concerned, that's a side issue. We would like to stay with the patent infringement issues, claim construction issues. You don't get to understand. I'm not suggesting. This isn't a question of your deciding what to do before us. No, I understand, Your Honor. You and your friend may decide that you don't care about this, but the counterclaim remains pending until it's dismissed with or without prejudice below, right? Let me put it this way. So is it pending? It is pending. Okay. And we don't have jurisdiction. That's fine. I have no counterargument or nothing to say to that. Could you speak to that, please? Yes, Your Honor. We disagree. We believe it is not pending, that the counterclaim was dismissed with the entire case because the counterclaim was only for patent misuse. Once the initial claim went away, the patent misuse claim also went away, and the judge set a final judgment which we did not contest. Well, I scoured this docket, and he does have a judgment entry, and it does appear that they closed the case. The judgment entry, of course, never refers to Rule 58, and there is not anything that affirmatively dismisses the counterclaim. So, I mean, when you say it went away. It was our position or belief that the counterclaim was dismissed, and to the extent it wasn't dismissed, we dismiss it now. Well, I'm sorry, but you don't have the authority, as far as I can tell, to dismiss the claims. What you're telling us, and this is what I was going to suggest, I think in the past our practice has been, or at least some panels, that in these circumstances, in order to not waste resources, either yours or the court's, we would give you a certain amount of time. In our view, we don't have jurisdiction to hear this case. We would kind of hear the arguments this morning because we're all here, so we won't have to go through this again in the event that we, and we would issue an order dismissing the case, giving you all a certain limited amount of time to just go back and have the district court dismiss the counterclaim with or without prejudice, as you see fit, or seek that the district court would do that. If that happens, then I think we have the precedent that suggests that we file the appeal, but we don't have to go through the rest of the stuff other than ruling on the case that we've heard today, the arguments that we've heard today. Any questions about that? That's the way I would propose to proceed, subject to our revisiting this together after we hear the argument. That's fine, Your Honor. I'm going to look again at the record while Helen is speaking. Well, no, I'm more than happy. What I contemplate we will do, and again, subject to review by the panel after we hear the argument, is dismissing the case for lack of jurisdiction, but because there are pending counterclaims. Sure enough, if you can prove to us within the next very short time that the counterclaims have, in fact, been dismissed, then that resolves the entire problem. If you can't, then what I suggest is we go back to the district court and make sure that happens. There's no formal reference to the counterclaim being dismissed. There's not even a statement. Sometimes judges will say, this resolves all disputes and the case is hereby closed. While it was administratively closed by the clerk's office, the trial court never said anything like that. Your Honor, if I may, I think I may have misspoken. I didn't understand the court's jurisdictional question. Now I understand what's going on. I did not believe that there was a pending counterclaim at this point. Now I understand what the issue is. I believe the court did issue what it styled a final judgment, and that's what we based our appeal on. My understanding was that all issues pending before the court were resolved with that final judgment. So I may have misspoken earlier when I said that I thought the counterclaim was pending. My understanding, and apparently I'm in agreement with Mr. Scale, is that all issues were resolved in the lower court. And just to add, Your Honor, my co-counsel stated during the oral argument the judge asked, if I find the favor of granting this motion for summary judgment, will this resolve the entire case, including the counterclaims? And we all agreed it would. That's correct, Your Honor. Well, the panel will discuss that. In any event, whether we decide that that's insufficient and you've got to go back and cross your teeth and dot your I's, we're all comfortable with hearing the argument today in the interest of judicial efficiency. So why don't we proceed with the merits? Thank you. One last quick question, procedural. If it is as you suggested, Your Honor, would we submit new briefs? No. I mean, what I'm trying to avoid, and I think our precedent indicates that we have the authority to not do that. If you come back within 10 days with some indication that it's satisfactory that the counterclaims have been dismissed, then we just retake the case up starting after the argument. And for the record. We would not require new briefs or a new argument. We would decide it based on everything that's been submitted as well. And we certainly would not oppose a motion to dismiss the counterclaims. So I think this should be non-controversial. Thank you. Okay. Good morning, Your Honor. I'm Philip Mann on behalf of the appellants, Michael Stern and DigiFlow, Inc. And with me at the council table today is Mr. Stern, one of the plaintiffs in the proceedings below. We're here before you, Your Honor, on an appeal seeking a reversal of a decision by the district court on summary judgment to dismiss the patent infringement claims brought by Mr. Stern. Now, the court in its decision below adopted what we believe to be an overly restrictive and incorrect construction of the term binary gas. We have a number of challenges to what happened in the proceedings below. The first is whether binary gas should even be a limitation in the claims in question. As we've stated and probably addressed ad nauseum in the briefs, our position is that binary gas appears in the preamble of the claims. And that's the only place where the actual word binary gas appear. Yes. But in claim one, for example, binary gas is in the preamble. But then the body of the claims refer back to the gas mixture. So the preamble provides the antecedent basis for. Sir, yes, I understand your question. Catalina Marketing and other preamble cases that have come from this court said that one of the instances in which the preamble will be considered a limitation is when the body of the claim refers back to it for antecedent basis. So why doesn't that establish at least for claim one why binary gas mixture is in fact a limitation? Well, I would suggest, Your Honor, that that is an overly mechanical approach on it. It does refer back to it. But the fact whether the gas is binary or has additional elements has absolutely no effect on the underlying structure. So we're relying on the cases that say the preamble is important only if it gives life or meaning to the body of the claim. But Catalina Marketing says it gives life or meaning as one example. But it also says or if it was modified during prosecution history as another example. And then it goes on to say or if it provides antecedent basis. So, yes, it would be great to choose to rely on only one of the three. But I think it sets out a multitude of different ways in which the preamble can. Maybe I'm not remembering Catalina Marketing right and your interpretation is different. That may be true of us, Your Honor. But my understanding of the argument we were making here is that it really makes no difference to the actual operation of the method claim. It may make no difference, but if you claimed it, it's part of the claim. I mean, you know how often we get people saying, but this element doesn't matter. Just look beyond it. Well, it's part of your claim. It matters. We are bound by the language you chose to use. Well, that's actually true, Your Honor. But, again, that's not my question. Did you say that's not actually true or did you say that is true? No, I said that certainly the cases are out there, and I can't deny that the claim does, in fact, say the binary gas in a few places in the body of the claim. The claim says what it says. Our position is, in essence, whether we're talking about a purely mechanical approach where, aha, the word thought is there, you're stuck with it, for better or worse, or do we actually engage in claim construction, which is to figure out what these claims actually mean, what invention is actually protected by this patent. I would suggest that the latter is a better approach. Is your argument different for the apparatus claims than it is for the method claims? Yes, the argument is much different for the apparatus claims. What we are pointing out is that making and selling an invention or a product is an act of infringement. You don't have to actually use it. For example, if I have a patent that covers, say, a garden hose and I have an inlet for letting water in and a nozzle at the other end for letting water out, if I have a dry garden hose that I offer for sale at a hardware store, could you build the argument that, well, that doesn't infringe because there's no water in it at the time that it is being sold? Yes, but here's your problem. Your method suggests that it's for use in a binary gas mixture, and then your apparatus claims, they all talk about the manner in which this apparatus is going to work is once you know the composition of one of the two elements, then you know how much of the other one is present. Well, that only works if there's only two of them, right? Because if there are three of them and I know how much of one element is present, I have no clue what the amount of the other two elements. I know collectively what they are but not individually. So if that's the way that this operates, I mean, I don't see how it isn't limited to binary. Well, I would respectfully disagree with that analysis, Your Honor, for the following reasons. What we're talking about here is not whether there are two and only two elemental gases. You know, gases exist in pure elemental states. What we're talking about here is you have one group of gases on one side and another group of gases on the other side, and that's what makes it binary. And for support for that, I would point to the patent itself where it says… Well, so you've got two different arguments. I mean, the one is whether it's limiting in the first instance. So I guess we're moving on from that. But as I read your brief, you've sort of changed your debate from whether binary really means two to really what the definition of gas is, right? No, I disagree with that, Your Honor. I was saying that we have to look at what the patent actually says. And our position is twofold. One is that the district court should not have treated this as a limitation in the first place, and I think we're beyond that. Now, the second argument is even if you do treat that as a limitation, the court adopted an overly narrow view of binary gas. The patent itself says this is in column one. Did you ever ask for the phrase gas or gas mixture to be construed by the court? That's an interesting question, Your Honor. What happened here was we have in the Western District of Washington a very elaborate procedure for… Yeah, we know all that, but, I mean, in that first procedure that got canceled, did you ask for gas? No, we did not ask for gas to be construed. We had certain terms that were up for formal construction. The case came up, a motion for summary judgment was filed by the defendants, which for the first time raised this binary gas issue. So we only had one chance to address what binary gas meant, and that was in the context of an opposition to a motion for summary judgment. Was there any expert testimony or expert affidavits at the context of the summary judgment motion regarding the question of what constitutes a gas mixture and whether it's limited to elemental gases? No expert testimony, Your Honor, but we did submit references and documents that show that binary gas is used by people skilled in the art to refer to air, among other things, and air mixed with other things. Why didn't you submit an affidavit at that point? We were caught a little bit off guard. This was a motion for summary judgment. We were not getting engaging in experts at that time. I guess with retrospect, you know, we say, why didn't we do things differently? But the answer on that, Your Honor, is that we didn't have time. We didn't know this issue was going to come up. We were a little bit blindsided by it. When I had asked my earlier question, you were about to answer it, and I think you started by saying, well, in Column 1, then you didn't get a chance. I don't want to let you direct me to whatever it is in Column 1 you wanted to. If you're already so far gone you've lost sight of what you wanted to say, I totally get it. But if you wanted to point to something in Column 1 that you thought helped your definition, then I'm happy to hear you. Okay, well, thank you, Your Honor. I'm very interested in getting this in. If we look at the technical field of the invention, and, Your Honor, this is on page A53 of our principle brief. It says technical field. It refers to gas concentration sensors suitable for indicating the concentration of flow of gas and gas delivered to a patient for medical purposes. So clearly the technical field of this patent is for purposes of delivering oxygen to patients in a medical context. If you go down to the very next paragraph under background art, it refers to this leaves, okay, for example, oxygen gas concentrators, that's a key word, oxygen concentrators, may be used to remove the carbon dioxide and nitrogen from air. That leaves a predefined mixture of oxygen and argon, which is not removed by the concentrator. So it very clearly talks about taking air and dividing it into one component that has carbon dioxide and nitrogen. But, counsel, one thing, first off, this is prior art you're describing here, the background art, and here you use the words gas mixture, not binary gas mixture. Nowhere in this section that you're referring to do you refer to air as a binary gas mixture. Well, we're talking that this is binary. Where does it say binary? It does not right here. Right. That's the problem. When you're talking about the prior art and you're talking about air, you don't use the word binary gas mixture to refer to it. So I don't see how air suddenly becomes a binary gas mixture. Well, I'm trying to explain that this is where I believe it does. It's because you're starting out with air. It says in the prior art we're talking about oxygen concentrators that may be used to remove carbon dioxide and nitrogen from air. Now, why don't we look at column two? Since column one doesn't actually use the word binary anywhere in it, why don't we look at column two, line 33, where you actually do use the word binary? I think that might be the first time it appears. For binary gases, as concentration of one gas constituent decreases, the concentration of another increases. Well, that seems to suggest that we're talking about two different and no more than two different individual gas constituents, right? Well, not to sound smart-alecky, Your Honor, or anything, but I think the answer there would be, nor does it say elemental gases or primary gases, which is what the district court found its basis decision on. Now, true, it says this is what it sounds like. Do you think a gas constituent can be more than one gas? Certainly. Certainly. And that's why the background art says in the context of the patent, that is what Mr. Stern is referring to in the first paragraph of the background art, where he talks about you take air and you divide it into two broad components, one containing nitrogen and carbon dioxide, the other containing oxygen and argon. So I would say that the patent very definitely supports that idea, that it does not have to be two elemental gases. It can be just divide the gas into, we start out with this mixture of air, broadly put the oxygen and argon on one side, the nitrogen and the carbon dioxide on the other. Now you're into your rebuttal. Do you want to keep going or do you want to save it? Well, I'd be happy to do, if the court has questions, I'd be happy to answer them. If not, I'd like to reserve some rebuttal time. Okay. Thank you. Mr. Steele? It is. Thank you, Your Honor. Good morning. This is, in our belief, a case that can be boiled down to three simple issues. All the claims require use of a binary gas. A binary gas, as the district court properly construed, is a gas mixture comprised of two gases, and there's no evidence in the record of Sequel's accused device using anything other than three gases. What say you to your friend's reference to the specification? The specification in our position is very clear. If you look at the section that Judge Moore cited, column two, lines 32 and 37, it's very specific. For binary gases, as concentration of one gas constituent decreases, the concentration of another increases. That can only happen with two gases. Looking further down at column two, look at lines 24 and 25. You'll see that the only example mentioned is of a two-gas system, having only oxygen and nitrogen. I'm sorry, that line is at 60. Sorry, my apologies. And it states that the stored calibration values and equations, a microprocessor determines the concentration of oxygen or of another component of the gas. I'm sorry, that example was oxygen and another component. And then line 24, as I stated, mentions oxygen and nitrogen. The only examples given in the specification for the invention is of a two-gas system. But, again, the judge does conclude that we are talking about elemental gases, and yet there's no evidence either way as to what gaseous mixture means. Put aside the fact, the binary notion. And even when you have oxygen, there's always other elements, even of small quantities in what would otherwise be considered pure oxygen. So, I mean, the normal general understanding of a gas is not something that's always pure, right? Well, Your Honor, I can't tell you. There's no evidence to the record of whether gases are pure or not, whether you can make a pure gas or not. But wasn't that essentially a finding of fact that the court made by saying that it requires an elemental gas mixture and yours doesn't have just two elemental gas mixtures? I mean, he did a claim construction without saying he was doing it, impliedly, and then makes a finding of fact as it relates to your product for purposes of infringement, all in a summary judgment. We disagree, Your Honor. We believe the judge was clear in stating that it's a gas mixture comprised of two gases. They could be elemental gases. They could be, I mean, carbon dioxide could be one gas. That's composed of both carbon and oxygen. So I don't agree that necessarily, as my opponent states, the judge inferred elemental gas, but it has to be. But you defrayed elemental gas. I disagree, Your Honor. I don't believe that phrase appears anywhere in the district court's opinion. That's something my opponent has inferred based on their arguments. But the court was clear. It said numerous times that a binary gas is a gas mixture comprised of two gases. And it could be, as I said, any type of known gas. It could be a gas that had many elements. But they'd have to be two discernible gases, such that as a specification and the claims I'll require, that when you measure one percentage of the gas, you then know what the other percentage is, because it's a two-gas mixture. So it doesn't have to be elemental gases. I hope that answered your question, Your Honor. Not completely. So then how is it that your product does not compare gas concentrations? Sequel's device uses three gases, nitrogen, oxygen, and argon. And there's no evidence that it only uses two of those. It's undisputed. The evidence in here is there's not very much. Sequel presented evidence that it uses a three-gas system. My opponent never introduced any evidence that it was a two-gas system. Even under any of the constructions they've proposed, there's no evidence of infringement under any of those constructions. Even if you look at that definition which we were just talking about. Let's say the definition was of elemental gas. There's still no evidence in the record that Sequel's device looks at elemental gases, of course. But even if it's with something else, there's been no construction that you've heard from the other side which you then could take that construction and look at evidence of how Sequel's device works and say, ah, yes, that infringes. And as the court well knows, that's what you have to do in infringement analysis. You construe the claim, and then you look at the evidence. No evidence of a two-gas system that Sequel uses. Undisputed evidence is three gases, nitrogen, argon, oxygen. Let me turn you to Claim 10, the apparatus claim in Claim 10. And clearly in the preamble there are references to a binary gas mixture. But isn't it arguable that unlike the method claims and even perhaps Claim 12, that in Claim 10, that that preamble relates to intended use and that there's nothing in the actual description of the apparatus that requires that intended use? Claim 10 at the end states that you have to send an echo sound wave that it may be utilized to calculate the gas ratio mixture. Under the point of antecedent basis, our belief is then the gas ratio mixture, that's the gas ratio measurement, has to refer to the binary gas ratio measurement. But even if we were to extend this argument out to the capable argument, capable of argument that I think my opponent's been trying to make. Because that's all it has to be, right? It's capable of doing it. But you still need to have evidence of actual infringement. It has to still be capable of infringing. And there's no evidence that Sequel's device is even capable of infringing. Because someone has to be able to say that, okay, let's say my device is capable of using a binary gas. Assume binary gas is just part of the preamble. It still has to be able to calculate the gas ratio measurement. Let me make sure I understand your argument. You're saying there's no evidence that our product will work with just two gases, number one, and there's no evidence, even if it would be capable of doing it, there's no evidence that it ever has been done. So you can't, there's no evidence of direct infringement. You couldn't go after us for inducement. You can't go after us for direct. We've never done it on two elements, and there's no evidence in the record to say that. That's exactly correct, Your Honor. Is there a problem with the fact that the judge did all this before allowing any discovery or expert report? Well, Your Honor, the discovery was open in this case for a long time. They could have looked at, done a number of issues of discovery. In fact, if you look at the end of the court's opinion, counsel had asked under Rule 56F for some more discovery. They didn't appeal that decision. So the issue of whether there was more discovery or should have been allowed more discovery was never appealed and isn't properly before the court. So even if they felt they were entitled to more, they didn't appeal it. And just for a reference, the Fujitsu site, 620F3, 1321, states that even if you're going to make that capable argument, you still have to show evidence of infringement in order for there to be infringement, which makes sense. Otherwise, anyone could theoretically say anything's capable of doing anything. If you don't have any evidence requirement, then there's no need. It makes it very easy to prove infringement. Any other questions on that issue? Moving forward then, it's our belief that under all the arguments they've made, there's no evidence of infringement. And that's really the simple point here. No matter looking at all the issues they've raised, there's just simply no evidence of infringement in this case. And plaintiffs had their opportunity to look for that evidence, to ask for more time to get that evidence. They did ask for more time and were denied it and then didn't appeal it. You seem to be winding up. Can I ask one more question going back to jurisdiction? You don't mind if I spend a little of your time on this? No, please. So you both stood up and said, we believe the patent misuse counterclaim absolutely positively was dismissed, right? Correct, Your Honor. And why the heck are they appealing the denial of the dismissal of the patent misuse counterclaim? And why, in response to that appeal, didn't you say, well, by golly, it already was dismissed? We did, Your Honor. I don't remember that. I don't remember. I remember you arguing why it didn't have to have been dismissed, why there was no error on the district court. I don't remember you saying, my gosh, we all believe it was dismissed. I mean, you're both sitting here saying that, but I don't know that we can really reconcile that with their appeal and your response. In the beginning of our response on the patent misuse section, we did state our surprise at seeing this and said that this issue... You said you thought it was mooted, but that's not the same as you having dismissed an existing counterclaim. Well, we had no belief that it was still pending. I can assure you of that. It was our position, our belief, that the patent misuse claim went away with the entire case, that this case was ripe for appeal. And if we noted at the end on our brief of page 39, that that is the very reason the district court entered judgment following its grant of summary judgment, appellants do not complain that this was erroneous. So at the bottom of page 39, it was our belief it was dismissed and it was gone, and we didn't think that there was any error that it was dismissed and it was not... So at that point you think it would have been up to you if you wanted to revive it to argue that the court erred by entering final judgment. Right. We would have had to have appealed that, but we didn't believe that was the case. And our position still is that if the court were to affirm that the whole case would be over... This statement would be true if it was an affirmative defense, but not if it's a counterclaim. Right? Well, it was... Because your statement is that patent misuse defense to infringement is mooted as non-infringement exists as a matter of law, but you still got a pending counterclaim. But patent misuse is a funny counterclaim, as I'm going to agree with my opponents on one issue. They stated that a patent misuse claim can't make a claim for damages. And so without the underlying... But under a D.J. action, you can have a declaration the patent's unenforceable. So you can't get money, but why can't you get unenforceability? I mean, no D.J. action comes with money. And your counterclaim is for a declaration of unenforceability, as I remember it. I don't have it handy if I'm wrong. The counterclaim deals with just a discrete period of time. It does, and we disagreed with whether the patent had been properly reinstated. Let me ask you, what would be your view if we reversed here? If we reversed on the binary issue or whatever, on the infringement stuff, or we vacate and remand it, is it your view that you would have to refile your counterclaim with regard to patent misuse, or that it's still pending before the district court so there would be no need to refile? I presume you would want to resurrect it if there were a reversal here. So what is your view of what you would have to do to resurrect it? Right, Your Honor. We would ask the court to resurrect it, noting that the... What is that? No, I use the term resurrect. I want you to clarify whether you would have to refile or whether your view is it's still hanging out there so you would just tell, wink and a nod, tell the district court, well, we're back. We buy that. We would probably seek to leave to amend to add it back in, unless it was of the court's opinion, as you said, that it's never been dismissed. But really that's probably what we would do is just seek leave to amend it back in, and hopefully there would be no disagreement that it was an issue. But our position has always been that it was dismissed. But we also had no objection to the court's procedure if that was how the court felt it was necessary to proceed, and that we would just procedurally ask the court to more officially dismiss the counterclaim. Does the court have any other questions? Thank you very much, Your Honor. Thank you. Mr. Mann, you have a few minutes left. Okay, thank you, Your Honor. Very briefly, I mean, the problem with this case is this. On a practical level, we are left with a claim that cannot possibly cover anything that exists in the actual physical world. The reason I say that, Your Honor, and I'm being dead serious about this, is because we can never be sure that any gas mixture includes only two gases, whether they are elemental or primary. There are always going to be trace elements of something else in the gas mixture. And in essence, what... Well, he's conceded that your gas mixture could have other primary elements in it. What he's saying is that you still have to have three gas mixtures if you're talking about his system, not two, regardless of what the gas mixture is made up of. Well, maybe I'm not understanding. If we are saying that the claim covers a device that can only be used with a mixture of gases that contains two and only two, even down to a molecular level, two and only two, such a product does not... such a gas does not exist in the practical world. We can never be sure that a gas mixture is exactly this amount of this, exactly this amount of that, and nothing else. It's always down to certain parts per million or trillion or whatever it is, but nobody can say, I can guarantee that this flask I have... He came up with a claim that was rejected by the examiner that said consisting of essentially two gases, which seems to be maybe what you're trying to argue is really the meaning, and didn't he reject it as indefinite and therefore you came back with the binary? Is that what... He rejected the claim for indefiniteness, but that is not what the basis was. He did not in any way, shape, or form, the examiner I'm referring to now, in any way, shape, or form, refer to the binary or the essentially two elements. If you look at the actual rejection, it starts talking about lines, I think it begins with lines 11 and 15 of the claim that Mr. Stern first submitted, so that's way past the essentially two gases. He changed the language from consisting essentially of two to binary, right? The language of the claim was changed, Your Honor, yes, but it was not changed. The examiner never pointed to that and said, hey, that essentially two gases is indefinite, you've got to change that. How do you keep that in then? If that wasn't a portion of the objection, it seems to be what you're trying to capture now in light of what you contend is the impossibility of ever meeting the stringent binary test. Well, the question is why that happened. The reason is this. Mr. Stern is the one who wrote his first patent application and wrote his first set of claims. He filed those with the Patent Office. The examiner came back with a rejection. Mr. Stern, at that point, engaged a patent attorney who helped him rewrite the claims. Those are the reasons why the short answer to your question is that's why this occurred. I can't speak to whether the attorney intended any change in the scope or meaning of the claim or tried to put it more into accepted patentees, so to speak, but that is what actually happened. That is the literal answer to your question, Your Honor, as to why this happened. But again, the point is there is nothing in the record, nothing in the office action that indicates that the examiner had any trouble with the language, essentially two passes. For whatever reason, Mr. Stern is a lawyer elected to change that language. Okay. I think we have your argument. We thank both counsel, and just to reiterate, the panel will decide as a threshold matter whether they think we've got jurisdiction, whether there's sufficient evidence for a final judgment. If not, you'll be hearing from us. We understand, Your Honor, and thank you. Thank you. All rise. The honorable court is adjourned tomorrow morning at 10 o'clock a.m.